**FLUOR ALASKA, INC., and Alaska Pacific Assurance Co., Appellants,**

v.

**PETER KIEWIT SONS' CO., Home Insurance Co., and Scott Wetzel Services, Inc., Appellees.**

**No. 4694.**

Supreme Court of Alaska.

July 18, 1980.

---

Charles P. Flynn, Burr, Pease & Kurtz, Inc., Anchorage, for appellants.

Frank S. Kozial, Jr., Delaney, Wiles, Moore, Hayes & Reitman, Inc., Anchorage, for appellees.

Before RABINOWITZ, C. J., CONNOR, BURKE and MATTHEWS, JJ., and DIMOND, Senior Justice.

## OPINION

DIMOND, Senior Justice.

This is a dispute between two workmen's compensation insurance carriers as to which is responsible for the payment of disability compensation to an injured workman, Roger Spencer. The Alaska Pacific Assurance Co. was the carrier for Fluor Alaska Co., Spencer's first employer, and Home Insurance Co. was the carrier for Peter Kiewit Sons' Co., Spencer's second and last employer.[1]

Spencer was an ironworker. While employed by Fluor, his job was to lift by hand and stand on end iron columns weighing from 150 to 200 pounds. He injured his back on September 14 and 28, 1977, but was able to return to work both times on the following day.[2]

Spencer testified by deposition that prior to December 1, 1977, the pain from his September injuries had been increasing steadily. He had been given some medication (Motrin), and after he ran out of pills he said he "really started hurting." Although Spencer had difficulty getting out of bed on some days, he said he needed the

---

1. Spencer has been compensated for his disability, so a resolution of this dispute will not affect him.

2. Spencer testified in a deposition that he had had no prior back problem.

job and so he worked with the pain until December 1, 1977. Because of his need for work, Spencer had not undergone the course of physical therapy earlier recommended by his physician.

About October 1, 1977, Spencer left Fluor and went to work for Kiewit doing what he described as the hardest ironwork he had ever done. He injured his back again a week or two after starting with Kiewit, and as a result missed two weeks' work. On December 1, 1977, the accident which is at issue here occurred. Spencer bent over and picked up a piece of iron, weighing 40 to 60 pounds, when his back "popped," and he could not stand up. He testified that the pain was extremely severe. Eventually he was flown to Anchorage. Spencer has not been able to go back to ironworking since that day.

The Alaska Workmen's Compensation Board found that the incapacitating injury of December 1, 1977, while Spencer was working for Kiewit, was merely a recurrence of the original injury suffered by him in September, 1977, while he was working for Fluor. Because of this, the board concluded that the carrier on the risk when Spencer was injured in September, Alaska Pacific, was responsible for all workmen's compensation benefits to Spencer, despite the occurrence of the December 1 incident, where the carrier at that time was Home Insurance. The board stated that this determination was "in accordance with prior holdings of the Board and follows *Larson's Workmen's Compensation Law*, § 95.12." The board then quoted the following passage from Larson:

> This group also includes the kind of case in which a man has suffered a back strain, followed by a period of work with

continuing symptoms indicating that the original condition persists, and culminating in a second period of disability precipitated by some lift or exertion.

Subsequent to the date of the board's decision and the date of the superior court's affirmance of that decision, we decided the case of *Ketchikan Gateway Borough v. Saling*, 604 P.2d 590 (Alaska 1979). The principal question presented in that case was "who must bear the responsibility for the worker's compensation benefits when employment with successive employers contributes to the worker's disability." *Saling*, 604 P.2d at 593. There we adopted the "last injurious exposure rule," which "imposes full liability on the employer at the time of the most recent injury that bears a causal relation to the disability." [3] *Saling*, 604 P.2d at 595.

■ A determination as to which employer is responsible under that rule in turn depends upon whether a particular employment aggravated, accelerated, or combined with a preexisting condition of the worker to produce disability. This is a rule we adopted some time ago in *Thornton v. Alaska Workmen's Compensation Board*, 411 P.2d 209 (Alaska 1966),[4] and which, in the *Saling* case, we extended to situations where there have been successive work-related injuries.[5]

■ The ultimate question in applying the last injurious exposure rule is what degree or extent of injury in the final employment will suffice to bring the rule into operation. That question, too, is answered in *Ketchikan Gateway Borough v. Saling*, 604 P.2d 590 (Alaska 1979). In that case we stated:

> the death or disability for which compensation is sought.
> *Thornton*, 411 P.2d at 210.

---

3. 4 A. Larson, The Law of Workmen's Compensation § 95.12 (1979).

4. The rule we adopted in *Thornton* states in relevant part:

It is a well established rule in workmen's compensation law that a preexisting disease or infirmity does not disqualify a claim under the work-connection requirement if the employment aggravated, accelerated, or combined with the disease or infirmity to produce

5. *Thornton* dealt with an aggravation of a preexisting nonwork-related condition where we held the employer liable for the worker's entire disability. We have consistently followed this rule in subsequent cases. *See* cases cited in *Saling*, 604 P.2d 590, 595 n.10 (Alaska 1979).

The *Thornton* rule imposes liability whenever employment is established as a causal factor in the disability. Under principles of tort law, a causal factor is not a legal cause of an injury unless it is *a* substantial factor in bringing about the harm.

*Saling*, 604 P.2d at 597–98. On this aspect of the case we concluded by saying that Saling

> [N]eed only have shown that employment with the borough was a legal cause of his disability, and we find that the medical testimony before the board established that it was.

*Saling*, 604 P.2d at 598.

█ Applying the *Saling* decision to this case, the question for the board's decision was to determine whether Spencer's injury while working for Kiewit was a substantial factor in bringing about the final disability which prevented Spencer from continuing his avocation as an ironworker or, in other words, whether that injury was the legal cause of such disability. It is unclear whether the board utilized this standard in deciding this case. Consequently, we must remand this case to the board for a determination in the light of our recent decision in *Ketchikan Gateway Borough v. Saling*, 604 P.2d 590 (Alaska 1979). In the reconsideration of this case, there shall be no cost to Spencer in any way.

Alaska Pacific also argues that the superior court's award of attorneys fees was improper. Because this case must be remanded to the board for further consideration, the determination of that question is not appropriate since the prevailing party, with respect to the award of attorneys fees, is not known at this time.

REVERSED and REMANDED.

BOOCHEVER, J., not participating.